DECISION AND JOURNAL ENTRY
Defendant Gene W. Lansberry has appealed from his conviction for gross sexual imposition, in violation of R.C. 2907.05(A)(4). This Court affirms.
 I.
On July 22, 1999, Defendant was indicted by the Summit County Grand Jury on one count of gross sexual imposition, a felony of the third degree. Defendant waived his right to a jury trial. On March 17, 2000, the trial court found Defendant guilty and sentenced him accordingly. Defendant timely appealed, asserting two assignments of error. For ease of discussion, his arguments have been consolidated.
 II. Assignment of Error Number One There was insufficient evidence of "sexual contact" to support [Defendant's] conviction of "gross sexual imposition."
 Assignment of Error Number Two [Defendant's] conviction for "gross sexual imposition" was contrary to the manifest weight of the evidence.
 In his first and second assignments of error, Defendant has challenged the sufficiency and the weight of the evidence supporting his conviction. Specifically, Defendant has asserted that the State failed to prove that any sexual contact occurred. This Court disagrees.
Crim.R. 29(A) provides that a trial court must grant an acquittal if the evidence is insufficient to sustain a conviction of such offense. "[A] court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. If the evidence, viewed in the light most favorable to the State, is such that a reasonable mind might fairly find guilt beyond a reasonable doubt, the trial court shall not grant an acquittal and the issue will be presented to the jury. Id. at 263; see, also, State v.Thompkins (1997), 78 Ohio St.3d 380, 386.
At this point, the Court notes that evaluations of the sufficiency of the evidence put forth by the State and the weight of the evidence adduced at trial are separate and legally distinct determinations. Statev. Gulley (Mar. 15, 2000), Summit App. No. 19600, unreported, at 3. While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion.Thompkins, 78 Ohio St.3d at 390 (Cook, J. concurring). In determining whether the State has met its burden of persuasion, a reviewing court does not view the evidence in the light most favorable to the State.Gulley, supra, at 3. Instead, a reviewing court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Otten (1986), 33 Ohio App.3d 339, 340. A new trial is warranted only in the exceptional case where the evidence weighs heavily against the conviction. Id. "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis sic.) State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported at 4.
R.C. 2907.05(A)(4) provides:
 (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
* * *
 (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
 R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
At trial, Linda K. Wilt, a foster parent, testified that, on October 8, 1998, she obtained physical custody of Defendant's six year-old child, Benjamin, from Summit County Children Service Board (CSB). CSB informed Ms. Wilt that Benjamin was developmentally handicapped and legally deaf. Ms. Wilt stated that it was difficult to understand Benjamin at first; however, she began to understand his speech impediment. She also added that Benjamin did not have a problem understanding what she told him.
As soon as Benjamin arrived, Ms. Wilt noticed that he started "touching his private area." Ms. Wilt testified that Benjamin would touch himself in the bathroom and bedroom. She began reporting the incidents to CSB. After Ms. Wilt caught Benjamin masturbating in church, she explained to him the difference between a "good touch, bad touch." Ms. Wilt asked Benjamin if anyone had ever done anything besides wash or put cream on his private area. Benjamin replied that Defendant "went up and down" on him on his private area. Based on this information, Ms. Wilt filed another report with CSB. Lastly, Ms. Wilt testified that she was present when CSB, counselors, and the police interviewed Benjamin. Ms Wilt stated that she did not speak or instruct Benjamin at any time during his interviews.
Gary Smith, a detective from the City of Akron Police Department, testified that he investigated the matter after receiving a report from CSB. He contacted CSB and set up an appointment with Benjamin. Detective Smith asked Benjamin a series of questions to determine whether he knew the difference between a truth and a lie. After being satisfied with Benjamin's answers, he then proceeded to ask Benjamin about "good touches" and "bad touches." Benjamin explained the difference to the Detective and identified his private area as his "wee, wee." Benjamin further stated that his dad has moved his hands up and down on his private area. Benjamin told Detective Smith that his dad has touched his private area many times and no one else has every done anything like this to him. Lastly, Detective Smith confirmed that Ms. Wilt did not assist Benjamin in answering any of the questions.
Next, the trial court determined that Benjamin was competent to testify.[1] Benjamin explained that a good touch was when someone helped clean his private area. He testified that Defendant touched him in a bad way when he would "rub up and down * * * [o]n [his] private." Benjamin stated that this happened many times when he lived with his mom and dad. He testified that it happened in bed during the day, when he was home alone with his dad.
Carolyn Ruston testified that she was Benjamin's teacher from the Fall of 1996 to the Spring of 1997. She stated that Benjamin had a difficulty communicating when he first arrived, but that, eventually, the staff could understand him. Ms. Ruston testified that Benjamin would often come to school with his clothes smelling like urine. She further acknowledged that Benjamin had a rash in the area of his diaper. Ms. Ruston contacted CSB numerous times and would also talk to Benjamin's mom and dad about the situation.
Don Evans, III, an expert in polygraph examination, testified on behalf of the State. Mr. Evans testified that Defendant had failed the examination because his answers revealed deception.[2]
To contradict the State's case, Defendant and Benjamin's mother, Cynthia, testified. Cynthia stated that Defendant would not change Benjamin's diaper. She acknowledged that Defendant watched Benjamin for several hours during the day. Moreover, Defendant was in charge of bathing and putting Benjamin to bed. Finally, Defendant testified that he didn't change Benjamin's diaper because he was "afraid of trying or possibly getting into abuse[.]"
In reviewing the entire record, this Court cannot say that the trial court clearly lost its way and created such a manifest miscarriage of justice by finding Defendant guilty of gross sexual imposition. This case is not one of the exceptional cases in which a new trial is warranted. As such, Defendant's challenge to the manifest weight of the evidence is not well taken. Defendant's assertion that the State failed to present sufficient evidence to support his conviction, therefore, is also without merit. Accordingly, Defendant's argument is overruled.
 III.
Defendant's assignments of error are overruled. The judgment of the Summit County Common Pleas Court is affirmed.
 —
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ BETH WHITMORE
BATCHELDER, P. J., CARR, J., CONCUR
[1] Benjamin recited the alphabet, knew all the members in his family, the names of all the schools he attended, and the difference between a truth and lie.
[2] The record reveals that Defendant and the State stipulated that the polygraph test would be admitted into evidence.